NATIONAL PAPER BOX COMPANY, Appellant, v. AETNA LIFE INSURANCE COMPANY, a Corporation, Respondent.

Kansas City Court of Appeals, May 5, 1913.

1. **INSURANCE: Employer's Liability: Forfeiture: Notice.** Plaintiff sued to recover on an employer's liability policy of insurance, the amount paid to an employee who was injured, and who brought suit and obtained a judgment for $2500. Plaintiff's superintendent knew the employee was injured and kept informed of his condition. No notice was given defendant, as was required by the terms of the policy but after more than a year and a half had elapsed, the employee having brought suit for damages, plaintiff called on defendant to take charge

of the defense. *Held*, that a provision for notice in an employer's liability policy is of the essence of the contract and that a breach of such provision by the assured will prevent a recovery under the policy not on the ground of forfeiture but because of nonperformance of a condition precedent.

2. ———: ———: **Notice: Reasonable Time.** When the time in which notice shall be given is fixed under the contract and if the circumstances of the accident are such as to make it impossible to comply with the conditions, then the giving of notice within a reasonable time after it becomes possible, is sufficient.

3. ———: ———: **Forfeiture.** When there is no forfeiture clause prescribed in a contract the court should have regard to the consequences that result from the failure to give the notice as shown by the facts in the case, and if it appears that the purpose for which the notice and proof were required has really been accomplished, the plaintiffs should not be precluded.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

AFFIRMED.

*Battle McCardle* for appellant.

A policy may call for immediate proof of loss. But if it does not also provide, in express terms, that failure to give same shall work a forfeiture of the insurance, no forfeiture will result from failure to furnish such proof of loss and assured may recover its loss. Courts are powerless to insert a forfeiture clause in a contract of insurance, where the parties have omitted to do so, just as they are powerless to strike it out where the parties have inserted it. Dezell v. Fidelity & Casualty Co., 176 Mo. 253; James v. Casualty Co., 113 Mo. App. 622; Spoke Co. v. Casualty Co., 143 S. W. (Ark. 1912) 84; Rheims v. Ins. Co., 39 W. Va. 672; Ins. Co. v. Fielding, 35 Colo. 19, 83 Pac. 1013; Windle v. Surety Co., 151 Ill. App. 273; Ins. Co. v. Knight, 111 Ga. 622, 36 S. E. 821; Ins. Co. v. Downs, 90 Ky. 236, 13 S. W. 882; Assurance Co. v.

Hanna, 60 Neb. 29, 82 N. W. 97; Flatley v. Ins. Co., 95 Wis. 618, 70 N. W. 828; Mason v. Ins. Co., 82 Minn. 336, 85 N. W. 13.

*Clyde Bissett* and *Rosenberger & Reed* for respondent.

(1) The notice requirement of employer's liability policies, is in view of the purpose of such insurance, not only reasonable and valid, but is of the very essence of the contract, and the courts are united in holding that no recovery can be had if there has been unreasonable delay in giving such notice. Cooley's Briefs on Insurance, 3570; Paper Stock Co. v. F. & C. Co., 104 Mo. App. 157; Myers v. Ins. Co., 62 Oh. St. 760; 57 N. E. 458; London G. & Accid. Co. v. Siwy, 66 N. E. (Ind.) 481; Veneer Co. v. London G. & Accid. Co., 100 Wis. 378, 75 N. W. 996; Assurance Corp. v. Light Co., 28 Ind. App. 473, 63 N. E. 54; Wolverton v. Fid. & Cas. Co., 190 N. Y. 41, 16 L. R. A. (N. S.) 400. (2) The insurance being against liability, the purpose of the notice condition is to enable the company to prevent a liability from being fixed on the assured, whereas in life, accident and fire insurance, the company's liability is already fixed as soon as the loss occurs. Therefore the courts have quite uniformly given a more liberal construction to the notice provision in Employer's Liability policies than in such other forms of insurance. Cooley's Briefs on Insurance, 3570; Paper Stock Co. v. F. & C. Co., 104 Mo. App. 157; Myers v. Ins. Co., 62 Oh. St. 760, 57 N. E. 458; London G. & Acc. Co. v. Siwy, 66 N. E. (Ind.) 481; Liability Assurance Co. v. Light Co., 28 Ind. App. 473, 63 N. E. 54; Veneer Co. v. London, etc., Accid. Co., 100 Wis. 378, 75 N. W. 996.

JOHNSON, J.—Action on a policy of Employers' Liability Insurance. At the close of all the evidence the court gave the jury a peremptory instruction to

find for defendant and a corresponding verdict was returned. Plaintiff then filed motions *non obstante veredicto,* for a new trial and in arrest of judgment, all of which were overruled and plaintiff appealed.

There is no material controversy over the facts of the case. Defendant issued a policy to plaintiff, a large manufacturer in Kansas City, by the terms of which it undertook to insure plaintiff "against loss or expense arising or resulting from claims upon the assured for damages on account of bodily injuries . . . accidentally suffered, by reason of the operation of the trade or business described herein by any employee or employees of the assured while within the factory, shop or yard described herein," etc.

The policy began with the recitation that it was issued "in consideration of the warranties of the assured hereinafter set forth and of sixty-eight and 40-100 dollars estimated premium" and among the stipulations appearing on its face were the following: "This insurance is subject to the following conditions." Then appear conditions and restrictions from which we quote those which are essential to the present inquiry.

"Limits of Indemnity.

"A. The company's liability for loss on account of an accident resulting in bodily injuries to or in the death of one person is limited to five thousand dollars ($5000); and, subject to the same limit for each person, the company's total liability for loss on account of any one accident resulting in bodily injuries to or in the death of more than one person, is limited to ten thousand dollars ($10,000). The company will, however, as provided in conditions D and E hereof, pay the expense of litigation in addition to the sum herein limited, provided that if the company shall elect to pay the assured the sum as herein limited, it shall not be liable for further expenses of litigation after such payment shall have been made."

"Reporting Accidents and Claims.

"C. Upon the occurrence of an accident the assured shall give immediate written notice thereof with the fullest information obtainable to the home office of the company at Hartford, Conn., or its duly authorized agent. If a claim is made on account of such accident the assured shall give like notice thereof with full particulars. The assured shall at all times render to the company all co-operation and assistance in his power.

"Report and Defense of Suits.

"D. If thereafter any suit is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the company's home office every summons or other process as soon as the same shall have been served on him, and the company will, at its own cost, defend such suit in the name and on behalf of the assured, unless the company shall elect to settle the same or to pay the assured the indemnity as provided for in condition A, hereof.

"Co-operation of Assured. Expenses.

"E. The assured, whenever requested by the company, shall aid in effecting settlements, securing information and evidence, the attendance of witnesses and in prosecuting appeals, but the assured shall not voluntarily assume any liability, or interfere in any negotiations for settlement, or in any legal proceeding, or incur any expense, or settle any claim, except at his own cost, without the written consent of the company previously given, except that the assured may provide at the company's expense such immediate surgical relief as is imperative at the time of the accident."

On January 22, 1907, and during the term of the policy, one Hufford, an employee of plaintiff was injured in the factory. Both of his feet were run over and injured by a loaded truck under circumstances which suggested that negligence of defendant was the

proximate cause of the injury. The superintendent of
the factory was nearby and received immediate knowl-
edge of the facts of the injury and its cause. At first
there was no indication of a permanent injury and
Hufford did not quit work until three days later. His
injury appeared slight, at first, grew rapidly worse and
became so serious that he had to remain at home on
the fourth day and summon medical aid. Blood poison-
ing set in, gangrene appeared, and on May 1, 1907, his
left leg was amputated. Six months later the other leg
was amputated. The superintendent kept informed of
plaintiff's condition and knew that he attributed his
misfortunes to the injury. More than a year and a
half elapsed before Hufford spoke of claiming dam-
ages from plaintiff, but the evidence shows quite clear-
ly that plaintiff through its *alter ego,* the superintend-
ent, had knowledge from the date of the injury of facts
and circumstances that would have created apprehen-
sion in the mind of an ordinarily careful business man
that a substantial claim of that character might be
made sooner or later.

Plaintiff gave defendant no notice of the injury
until after Hufford filed suit for damages in December,
1908. Then plaintiff called on defendant to take charge
of the defense of the case. Defendant refused on the
ground that the failure of plaintiff to give notice in
accordance with the terms of the contract had released
it from liability. Plaintiff defended the suit which
proceeded to a judgment for Hufford in the sum of
$2500. Plaintiff paid the judgment and costs and then
brought this suit to recover the sum thus expended,
together with the amount laid out in attorneys' fees
and other expenses.

The provisions of the policy from which we have
quoted imposed the duty on plaintiff of giving defend-
ant "immediate written notice" on the occurrence of
an accident which term, of course, referred to an injury
to an employee that might be the basis of a claim for

damages against defendant. The subject-matter of the insurance contract was indemnity to the assured for "loss or expense arising or resulting from claims upon the assured for damages" made by employees on account of bodily injuries "suffered by reason of the operation" of plaintiff's factory and the provision for the giving of notice obviously was intended to apply only to accidents that fell within the scope of the subject-matter and not to those that could not afford a reasonable basis for a claim for damages on the part of an injured employee.

The term "immediate notice" as used in policies of insurance is liberally construed in the decisions in this State and in other jurisdictions to mean notice given with due diligence and in a reasonable time, "due regard being had to the attending circumstances." [Columbia, etc. Co. v. Fidelity & Casualty Co., 104 Mo. App. l. c. 166, and cases cited.] In Mc-Farland v. Accident Association, 124 Mo. 218, the Supreme Court say, "though the time in which the notice shall be given is fixed under the contract, if the circumstances of the accident are such as to make it impossible to comply with the condition giving the notice within a reasonable time after it becomes possible, has been held sufficient."

An injury might be of such character as to afford, at first, no reasonable ground for thinking that it might support a claim for damages against the employer. In such case we think the assured would not be required under the reasonable rule of construction we are discussing to give the assurer notice until such time as the facts of the injury and its progress began to suggest to a person of reasonable care and prudence that a possible liability of the assured to answer in damages lurked in them. The facts before the St. Louis Court of Appeals in the case from which we have quoted will serve for an apt illustration. A wo man employed as a sorter of rags was seized with

sudden illness while at work and it developed later that her attack came from handling infected rags which her employer had negligently ordered her to sort. The mere fact that she was suddenly taken ill contained no suggestion of a possible claim for damages and imposed no duty on her employer, the assured, to give notice of the event to the assurer, but that fact plus knowledge of the additional fact that she had been re- quired to work with infected rags that might produce the kind of sickness that attacked her would require the giving of notice within a reasonable time after knowledge of the latter fact came or should have come to the assured. Frequently an injury apparently too trivial to cause any damage or inconvenience develops into a most serious phase. The duty of the assured in such instances with respect to giving notice is per- formed if he gives notice within a reasonable time af- ter the injury first takes on a serious aspect, an aspect suggestive of a possible claim for damages.

In the present case an injury comparatively slight was suffered under circumstances that reasonably might point to negligence of plaintiff as the proximate cause. In three or four days the fact that the injury would entail serious consequences and might ripen into a claim for damages must have been apparent to plaintiff. Its superintendent who, as we have stated, was its *alter ego*, knew that Hufford's feet had been run over by the wheels of a truck, which with its load weighed over seven hundred pounds, and had been badly bruised; knew that Hufford claimed that this injury was the prime cause of the conditions that ulti- mately resulted in the amputation of both legs and further knew that there was reasonable support for a claim that the injury was due to negligence of plain- tiff. With knowledge of such facts the failure to give defendant notice within a reasonable time after the occurrence of the facts which pointed to a claim for damages as a reasonable probability was a breach of

one of the prime conditions of the contract the per-
formance of which was assumed by plaintiff.

But construing this condition as one looking
merely to a forfeiture and not as one in the nature of
a promissory warranty, counsel for plaintiff point out
that the policy does not in express terms provide that
a breach of that stipulation shall work a forfeiture
and invoke the rule that "courts are powerless to in-
sert a forfeiture clause in a contract of insurance,
where the parties have omitted to do so, just as they
are powerless to strike out where the parties have in-
serted it."

This rule applies in instances where the loss has
occurred and the liability of the assurer has thereby
become fixed and certain. Provisions for notice in
such cases are not considered as of the essence of the
contract but as looking to a forfeiture and the abhor-
rence of the law to forfeitures has led the courts to
hold that in the absence of an express agreement that
a failure to give the notice shall work a forfeiture, no
forfeiture will be declared in cases where it does not
appear that any substantial right of the assurer has
been lost or impaired by such failure.

After reviewing the authorities, the Supreme
Court say in Dezell v. Fidelity & Casualty Co., 176
Mo. l. c. 281: "Thus it appears that the courts draw
a distinction between policies which call for the notice
of death and proofs of loss and stipulate that a failure
to give such notice or furnish such proof shall work a
forfeiture of the insurance, and policies which call for
such notice and proofs but make no stipulation as to
the consequences of failure to comply with such call.
And whilst the courts are powerless to strike out the
forfeiture feature in those contracts in which the par-
ties have seen fit to insert it, they are equally power-
less to insert such a feature when the parties have not
seen fit to do so. Where no forfeiture is prescribed in

the contract the court should have regard to the consequence that results from the failure to give the notice as shown by the facts in the case, and if it appears that the purpose for which the notice and proofs were required has really been accomplished the plaintiffs should not be precluded.''

But manifestly this rule should not be applied to a policy such as that under consideration for the reason that the provision for notice of the accident is in the nature of a condition precedent, is a promissory warranty of the very essence of the contract. The accident to Hufford, of itself, fixed no liability upon defendant. It merely furnished a ground from which such liability might spring under certain contingencies. Defendant did not agree unconditionally to indemnify plaintiff for any loss or expense it might incur on account of that injury but imposed the condition to which plaintiff assented that it would so indemnify plaintiff, provided plaintiff gave immediate notice of the injury and put defendant in position to take full charge of the case to the end that it might employ its own skill and judgment in lawful efforts to ward off or minimize a loss. We have consulted all of the authorities cited in the briefs of counsel bearing on this subject and are persuaded that the better reasoning sustains the view that a provision for notice in an employers' liability policy is of the essence of the contract and that a breach of such provision by the assured will prevent a recovery under the policy not on the ground of forfeiture but on the ground of nonperformance of a condition precedent. [Cooley's Briefs on Insurance, 3570; Columbia Paper Stock Co. v. Fidelity & Casualty Co., 104 Mo. App. 157; Myers v. Travelers Ins. Co., 62 Oh. St. 760, 57 N. E. 458; London Co. v. Siwy, 66 N. E. (Ind.) 481; Underwood Veneer Co. v. London Co., 100 Wis. 378, 75 N. W. 996; Employers' Liability Assurance Corp. v. Light Co., 28 Ind. App. 473, 63 N. E. 54; Wolverton v. Fidelity

& Casualty Co., 190 N. Y. 41, 16 L. R. A. (N. S.) 400; Smith-Dove Co. v. Insurance Co., 171 Mass. 357, 50 N. E. 516; Deer Trail Mining Co. v. Maryland Casualty Co., 36 Wash. 46, 78 Pac. 135.]

We approve the doctrine as expressed in Cooley's Briefs on Insurance, supra: "Employers' liability policies very generally contain a requirement that the insured shall furnish immediate notice, both of any accident by which the insured may be rendered liable, and of any claim against the insured arising therefrom. These provisions are valid and of the essence of the contract, being designed to enable the insurer to investigate the circumstances of the accident while the matter is yet fresh in the minds of all, and to make timely defense against any claim filed. They are, therefore, usually given a more liberal construction in favor of the company than the requirement for notice and proof of loss under an ordinary fire policy, which can only become effective after the company's liability has been already fixed.

The courts have not been much concerned in determining whether these requirements constitute conditions precedent or causes of forfeiture. Nevertheless, in Underwood Veneer Co. v. London Guarantee & Accident Co., 100 Wis. 378, 75 N. W. 996, a stipulation that the policy was issued subject to the agreement in regard to notice was said to constitute a "condition precedent." And the same name was given to the provision in London Guarantee & Accident Co. v. Siwy, 66 N. E. (Ind. App.) 481. But in that case it was further stated that the failure to give the notice involved an "absolute forfeiture." But whether the condition be considered as a condition precedent or as one looking to forfeiture, the courts have at least been united in holding that no recovery can be had without a compliance with such condition."

We think the question of whether defendant could have done any better with the case than plaintiff did

is wholly speculative. We must presume that the breach of a condition so vital by which defendant was deprived of a substantial right is deemed important enough to be made an indispensable object of the contract did result in injury to defendant and was material to the risk.

The judgment is for the right party and is affirmed.

All concur.