**NORTHWESTERN MUTUAL INSURANCE CO., a Corporation (Plaintiff), Respondent,**

v.

**INDEPENDENCE MUTUAL INSURANCE CO., a Corporation, Garnishee of Reese Politte (Defendant), Appellant.**

No. 30065.

St. Louis Court of Appeals.

Missouri.

Jan. 6, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 2, 1959.

A. Robert Belscher, St. Louis, for garnishee-appellant.

Lawrence E. Ehrhart, St. Louis, for respondent.

HOUSER, Commissioner.

Garnishment. Northwestern Mutual Insurance Company, hereinafter "Northwest- ern," issued a policy of collision insurance covering an automobile owned by Luther R. McKinnon. Independence Mutual Insurance Company, hereinafter "Independence," issued a policy of insurance with personal injury and property damage coverage insuring an automobile owned by Reese Politte. While these policies were in force the two automobiles collided and McKinnon's automobile was damaged. McKinnon made claim upon his insurer and was paid $1,152.-50 for the damage to his automobile. By the terms of its policy Northwestern became subrogated to McKinnon's claim against Politte for negligently causing the collision. Northwestern brought suit against Politte, obtained judgment, and then instituted these garnishment proceedings in which interrogatories were filed naming Independence as garnishee of Politte. Garnishee answered, denying any indebtedness to Politte. Issue was joined by the filing of a Denial of Garnishee's Answer and Reply of Garnishee. The garnishee admitted the issuance of a liability policy on Politte but set up the defense of breach of the conditions of the policy in that its insured failed to forward to Independence any notice, summons or process received by him, failed to cooperate with the company, refused to attend the trial or assist in any way in the conduct of the lawsuit, and did not fully comply with all the terms of the policy, as required by the contract of insurance. Submitted to the Circuit Court of the City of St. Louis, sitting without a jury, judgment was rendered for Northwestern, subrogee, and against Independence, garnishee, for $1,204.36. Garnishee has appealed from the judgment.

The pertinent conditions of the policy follow:

"2. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

"16. The insured shall cooperate with the company and, upon the com-

pany's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits * * *

"6. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy."

Northwestern issued a policy to McKinnon with collision coverage. Independence issued a policy to Politte with personal injury and property damage liability coverage. Both policies were in force and effect on July 21, 1955. The two automobiles collided in Franklin County on that date. The accident was reported to Indpendence, and known to the president of the company. Independence referred the matter to Holtcamp, Miller & Risch, a firm of St. Louis attorneys, for investigation. A representative of that firm, Jim Amelung, made an investigation of the case. He took a statement from the insured, Politte. McKinnon made claim upon Northwestern and was paid $1,152.50. By the terms of the policy Northwestern became subrogated to McKinnon's rights against Politte. A lawsuit against Politte for personal injuries arising out of the accident was filed (by whom is not shown), in the course of which depositions of several witnesses were taken "after a lot of trying" on the part of Independence's lawyer, Mr. Miller, "to get Politte into" his office. That lawsuit was compromised and payment of the sum agreed

upon was made by Independence under the same policy which contained the property damage coverage of Politte. Mr. Miller had in his file a letter written and signed by Mr. Lawrence E. Ehrhart, attorney for Northwestern, addressed to Politte, informing Politte that Mr. Ehrhart represented Northwestern in the Luther R. McKinnon case for property damage arising out of the accident. On March 2, 1956 Mr. Miller sent Mr. Ehrhart an acknowledgment of that letter. On March 7 Mr. Ehrhart wrote Mr. Miller to the effect that his client's total loss was $1,152.50. On March 12 Mr. Miller wrote Mr. Ehrhart stating that he was in a position to discuss settlement of the property damage claim against Politte at that time and that if Mr. Ehrhart's proposition was "all right" he would consider it. On several occasions the two lawyers discussed the merits of the subrogation claim, how much Mr. Ehrhart wanted in settlement in order to dispose of it, etc. but the subrogation claim was never settled. On July 20, 1956 Northwestern filed a subrogation action against Politte on account of the property damages suffered by McKinnon. Personal service of process on Politte was obtained July 21, 1956 by delivering a copy of the summons and a copy of the petition to Reese Politte, according to the sheriff's return. Politte did not send a copy of the petition and summons in the Northwestern lawsuit to Independence nor did he give Independence or its president any information with respect thereto. In August or September, 1956 Mr. Miller received a message from Mr. Ehrhart informing him that suit had been filed in behalf of Northwestern against Politte; that Politte's answer was overdue, and to please file an answer. In September, 1956 Mr. Ehrhart sent Mr. Miller a letter, enclosing a copy of the petition in Northwestern v. Politte. Mr. Miller then contacted Politte numerous times on the telephone, telling him that Miller had been informed that a suit had been filed and asking him to send in the petition and summons to Mr. Miller's law office. Mr. Miller also wrote to Politte, demanding that he bring the suit papers into the attorney's office, so

that the attorneys could "prepare the necessary answer and defense," calling Politte's attention to the conditions of his policy requiring co-operation, and threatening to disclaim coverage and withdraw the protection of the insurance coverage. Those letters were dated September 10, October 2, October 23 and November 17, 1956. The latter was sent registered mail and came back marked "refused." Mr. Miller testified he was "never able to get Politte to do anything." He got no response whatever to his letters and phone calls. Mr. Miller could never get the petition and summons from Politte; he "wouldn't send it in." No pleadings were filed in the Northwestern suit by or on behalf of Independence. No depositions were taken in the instant litigation. The case was set for trial March 6, 1957. Mr. Miller did not notify Politte that the case had been set for trial on a certain date. It does not appear that Politte was requested to attend the trial or that he knew from any source that a trial date had been set. On March 6, 1957 a default judgment for $1,152.50 was rendered for Northwestern and against Politte. The judgment not having been paid, these proceedings in garnishment were instituted.

Appellant's point on this appeal is that the trial court erred in entering judgment for Northwestern, in overruling garnishee's motion for new trial, in not setting aside the judgment for Northwestern and in not giving judgment for garnishee in accordance with the latter's motion for a directed verdict, because the conduct of insured, Politte, constituted a breach of certain conditions precedent in the contract, which were of the essence of the contract, in that insured failed (1) to forward the petition and summons to Independence or its representatives and (2) to cooperate with Independence after suit was filed.

█ Conditions 2, 6 and 16 of the policy are conditions precedent. They are valid, binding and enforceable provisions, Donlon v. American Motorists Ins. Co., Mo.App., 147 S.W.2d 176; Nevil v. Wahl, 228 Mo.

App. 49, 65 S.W.2d 123, of the very essence of the contract, Donlon, and of vital importance to the insurer. Nevil.

█ With respect to (1) above, insured was personally served with a copy of the summons and a copy of the petition on July 21, 1956. Neither "immediately," as required by Condition 2 of the policy, nor at any time did insured forward to the company the summons and process received by him. There was a total failure on the part of insured to comply with Condition 2. By the terms of Condition 6 of the policy full compliance with Condition 2 was expressly made a "condition precedent" to the liability of the company under the policy. Where the forwarding to the insurer of the summons, process or other suit papers relating to an action against the insured is made a condition precedent to liability on the part of the insurer, by clear and unambiguous language in the policy, compliance with such condition is necessary, and non-compliance entitles the insurer to deny liability under the policy, Donlon; Nevil; 45 C.J.S. Insurance § 1048; 29 Am.Jur. 829, § 1105; 76 A.L.R. 182, et seq., and particularly at pages 188, 189, 190; 123 A.L.R. 981, et seq.; State Farm Mut. Automobile Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P.2d 606, 18 A.L.R.2d 431, and cases cited; Annotation, "Liability Insurance: clause with respect to notice of accident or claim, etc., or with respect to forwarding suit papers," 18 A.L. R.2d 443, et seq., and particularly § 5, at page 452; Houran v. Preferred Accident Ins. Co., 109 Vt. 258, 195 A. 253, unless the right has been waived, Nevil, or the insurer is estopped to set up breach of the condition. Annotation 18 A.L.R.2d 487. Where the condition is expressly made a condition precedent, the insurer is relieved of liability whether or not the insurer has been injured or prejudiced by the breach of condition. Malloy v. Head, 90 N.H. 58, 4 A.2d 875, 123 A.L.R. 941; Deer Trail Consol. Min. Co. v. Maryland Casualty Co., 36 Wash. 46, 78 P. 135, 67 L.R.A. 275; 76 A.L.R. 187, 189, 203; Annotation 123 A.L.R. 981, 984; Annotation 18 A.L.R.2d 479; 8 Appleman,

Insurance Law and Practice, § 4732, p. 100. The parties to the contract having voluntarily [1] bound themselves to perform according to the strict letter of the condition precedent will be held to their obligation.

Exceptions are recognized when the condition precedent is complied with by the "real party in interest," even though he be another than the insured. So, a compliance by the injured person, who is the unnamed beneficiary of a liability policy, with a condition requiring the insured to forward suit papers to the insurer will enable the beneficiary to enforce the policy, notwithstanding the failure of the insured to act. Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 6, § 4033; 29 Am.Jur. 818, § 1090; 45 C.J.S. Insurance § 1051, p. 1276; 76 A.L.R. 38; 123 A.L.R. 954; Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826; Royal Indemnity Co. v. Morris, 9 Cir., 37 F.2d 90; Metropolitan Cas. Ins. Co. of New York v. Colthurst, 9 Cir., 36 F.2d 559; Slavens v. Standard Accident Ins. Co. of Detroit, Mich., 9 Cir., 27 F.2d 859; Bachman v. Independence Indemnity Co., 112 Cal.App. 465, 297 P. 110, 298 P. 57; Hartford Accident & Indemnity Co. v. Randall, 125 Ohio St. 581, 183 N.E. 433; Morris v. Bender, 317 Pa. 533, 177 A. 776; McClellan v. Madonti, 313 Pa. 515, 169 A. 760; Butler v. Eureka Security Fire & Marine Ins. Co., 21 Tenn.App. 97, 105 S.W.2d 523; Jameson v. Farmers Mutual Automobile Ins. Co., 181 Kan. 120, 309 P.2d 394; Simmon v. Iowa Mut. Cas. Co., 3 Ill.2d 318, 121 N.E.2d 509; Appleman, Insurance Law and Practice, Vol. 8, §§ 4738, 4740. McKinnon was a beneficiary of the liability policy and a real party in interest, and so is his subrogee, so that compliance by Northwestern's attorney with the condition precedent of the policy requiring that the suit papers

be forwarded immediately to the insurer would be sufficient to entitle it to maintain this proceeding, regardless of the failure of insured to comply with the condition. Condition 6 of the policy entitles any person or organization who has secured a judgment against the insured after actual trial to recover under the policy, and § 379.200 RSMo 1949, V.A.M.S. entitles judgment creditors of insureds to have the insurance money provided for in the contract of insurance applied to the satisfaction of the judgment.

The burden of proof upon the question of compliance with the condition, ordinarily imposed upon the insured, Bradley v. Illinois Automobile Ins. Exchange, 227 Ill.App. 572; Heller v. Standard Accident Ins. Co., 118 Ohio St. 237, 160 N.E. 707; Harty v. Eagle Indemnity Co., 108 Conn. 563, 143 A. 847; Depot Cafe v. Century Indemnity Co., 321 Mass. 220, 72 N.E.2d 533; Rushing v. Commercial Casualty Ins. Co., 251 N.Y. 302, 167 N.E. 450; Decker v. Kolleda, 57 Ohio App. 442, 14 N.E.2d 417; Home Indemnity Co. v. Banfield Bros. Packing Co., 188 Ark. 683, 67 S.W.2d 203; Appleman, Insurance Law and Practice, Vol. 8, § 4746, rests in this case on Northwestern, the subrogee of the unnamed beneficiary of the policy, which stands in the shoes of insured. Insured not having complied with the condition, did Northwestern sustain its burden of proving compliance? We think not. Northwestern showed that its attorney forwarded a copy of the petition to insurer's attorneys in September, 1956. What day in September is not shown. Assuming that it was prior to September 10 (on which date insurer's attorneys wrote a letter indicating that they knew that insured had been served with petition and summons) the fact remains that six weeks elapsed between the

---

1. This is a policy of insurance voluntarily entered into. We are not here concerned with the violation of a provision contained in a policy involuntarily given, as in a policy given in proof of financial responsibility under The Motor Vehicle Safety Responsibility Law, Ch. 303 RSMo 1949, V.A.M.S., which provides, § 303.190, subd. 6(1) that " * * * no violation of said policy shall defeat or void said policy." See Gabler v. Continental Cas. Co., Mo.App., 295 S.W.2d 194.

date of service of process (July 21, 1956) and the time Northwestern forwarded a copy of the petition to insurer's attorneys. Was this an "immediate" forwarding within the terms of Condition 2? Requirements in insurance contracts that "immediate" notice of an accident, injury or claim be given, papers forwarded, etc., do not compel instantaneous notice or forwarding but are construed to require the doing of these things with reasonable diligence and within a reasonable length of time in view of the attending circumstances of each particular case. Woodlock v. Aetna Life Ins. Co., Mo.Sup., 225 S.W. 994; McFarland v. United States Mut. Accident Ass'n of City of New York, 124 Mo. 204, 27 S.W. 436; Columbia Paper Stock Co. v. Fidelity & Casualty Co. of New York, 104 Mo.App. 157, 78 S.W. 320; National Paper Box Co. v. Aetna Life Ins. Co., 170 Mo.App. 361, 156 S.W. 740; Hayes v. Equitable Life Assur. Soc. of United States, 235 Mo. App. 1261, 150 S.W.2d 1113; Appleman, Insurance Law and Practice, Vol. 8, § 4734. The failure of insured to give notice of an accident, or to show good cause therefor, until six weeks after the occurrence of the injury, was held to constitute a breach of the condition of an accident policy in Myers v. Maryland Casualty Co., 123 Mo.App. 682, 101 S.W. 124. In other circumstances we have held that fifteen months is not an unreasonable length of time, as a matter of law, within which to give notice of the pendency of an action. Brookville Electric Co. v. Utilities Ins. Co., Mo.App., 142 S.W.2d 803. In the instant case the record is vague with respect to the attending circumstances. The record does not disclose when Northwestern learned of the existence of the policy; whether on July 21, 1956 Northwestern knew of its existence and of the condition requiring the forwarding of suit papers; whether Northwestern made inquiry of the insured to determine whether insured had complied or intended to comply with the condition, or what length of time expired between the time Northwestern learned that the insured had not forwarded or did not intend to forward the papers and the time Northwestern actually forwarded them. These and other questions pertinent to the inquiry on the exercise of diligence by Northwestern and the reasonableness of the six-week period are left unanswered. Notice cannot be required until there is knowledge of the existence of a policy requiring the giving of notice. Lauritano v. American Fidelity Fire Insurance Co., 3 A.D.2d 564, 162 N.Y.S.2d 553; Jameson v. Farmers Mutual Automobile Ins. Co., supra; 8 Appleman, Insurance Law and Practice, § 4738, p. 124; 6 Blashfield Cyclopedia of Automobile Law and Practice, § 4033, p. 39. As between the insured and insurer and the injured and the insurer the standards by which notice must be given differ. The injured person's rights "must be judged by the prospects for giving notice that were afforded him, not by those available to the insured." Lauritano v. American Fidelity Fire Insurance Co., supra; Jamestown Mutual Insurance Co. v. Valentin, 10 Misc.2d 606, 172 N.Y.S.2d 9, 11. The record is short on facts and long on conclusions in this respect. Because of the uncertainty and indefiniteness of the evidence we are unable to determine whether the forwarding of the suit papers by Northwestern six weeks after service upon insured was an "immediate" forwarding under the particular circumstances of this case; whether there was any legal excuse or valid explanation for the delay in forwarding the suit papers to insured. The "silence and obscurity" [2] of the record in this respect renders impossible our determination of this question on this appeal.

 With respect to (2) above, the policy required, as a condition precedent that insured cooperate with the company, and upon the company's request, attend hearings and trials, assist in effecting settlements, securing and giving evidence, obtaining attendance of witnesses and in the

2. Rushing v. Commercial Casualty Ins. Co., 251 N.Y. 302, 167 N.E. 450, 451.

conduct of suits. Appellant asserts a breach of the cooperation clause in that insured "refused to recognize his responsibility to assist his insurance company and its counsel in the preparation of the defense of the lawsuit;" refused "to come into the office and discuss the nature and extent of the liability if any;" "ignored all efforts to obtain his cooperation with respect to the litigation;" and "was completely indifferent to and intentionally disregarded all of garnishee's efforts to have him forward the suit papers and cooperate with respect to plaintiff's litigation." In assessing insured's conduct it is not necessary for appellant to show that insured's conduct resulted in prejudice to the insurer, in view of the fact that Condition 2 constituted a condition precedent. Authorities, supra. Even so, insured's lack of cooperation, to exonerate insurer, must have been in some substantial and material respect. Lack of cooperation in an inconsequential or immaterial matter or manner will not justify a disclaimer of liability under the policy. If insured, however, was guilty of lack of cooperation in a substantial and material respect, Northwestern cannot enforce the policy because Northwestern stands in the shoes of the insured. Its rights are derivative. Donlon, supra; 18 A.L.R.2d 501. While it appears that insured's cooperation was not hearty, fulsome or cheerfully given, the insurer was duly notified of the occurrence of the accident. Insured gave appellant's investigator a statement concerning the case and he came into the attorney's office to give his deposition in the companion suit, albeit with reluctance. While he was unresponsive and did not later come into the attorney's office when requested there is no showing of any specific or particular information that he refused to give appellant's investigators or attorneys, upon their request, or that he refused to answer their questions, concealed evidence or interfered in any manner with the investigation of the claims. The evidence of lack of cooperation consisted chiefly of mere conclusions.

Insured's failure to attend at the trial is not to be held against him in this case. Under Condition 16 that duty depended upon the company first requesting his attendance, but he was not so requested. There is no evidence that insured failed to assist in effecting a settlement, in securing or giving evidence, in obtaining attendance of witnesses or in the conduct of the suit. Insurer and its representatives maintained an active interest in the protection of insured during the period preceding the filing of the subrogation lawsuit, by investigating the case, taking depositions in and settling a companion case, and in negotiating for the settlement of the instant claim, but upon the failure of insured to forward the suit papers served upon him, insurer apparently lost all interest in the defense of the case. Insurer had no complaint about insured's conduct until insured ignored the telephone calls and series of letters sent him by insurer's counsel between September 10 and November 17, 1956. Given an opportunity to file an answer out of time insurer declined to do so. Presented with the suit papers by the attorney for the subrogee, insurer made no effort to defend. Insurer's attorneys' sole interest thereafter was that of obtaining the presence of insured at their offices and the procuring of the suit papers from him personally. No effort was made, during the seven and one-half months following service of process, to prevent the taking of the ensuing default judgment. On the sparse record available for our review we do not find lack of cooperation in any material and substantial respect either before or after service of process on insured, other than insured's violation of Condition 2 (failure to forward the suit papers). Whether Northwestern by its own acts satisfied the requirements of Condition 2 was not established clearly and sufficiently to justify our affirmance of the judgment.

The facts not having been fully developed, although apparently available, the judgment should be reversed and the cause remanded for a new trial in order to per-

mit the parties to fully explore and develop all of the pertinent and material facts bearing upon the questions of delay of Northwestern in forwarding the suit papers and insured's lack of cooperation, and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.

RUDDY, P. J., WOLFE, J., and JOHN K. REGAN, Special Judge, concur.