ELYNOR FISCHER, APPELLANT, v. WESTERN & SOUTHERN INDEMNITY COMPANY, A CORPORATION, FORMERLY KNOWN AS AMERICAN LIABILITY & SURETY COMPANY, AT CINCINNATI, OHIO, A CORP., GARNISHEE OF ARTHUR FENTON, ALSO KNOWN AS JAMES A. FENTON, DOING BUSINESS AS TIGER TRANSFER COMPANY.—110 S. W. (2d) 811.

St. Louis Court of Appeals.    Opinion filed December 7, 1937.

*E. P.* and *R. C. Brinkman* for appellant.

888

*William R. Schneider* for respondent.

McCULLEN, J.—This garnishment proceeding was instituted by Elynor Fischer, appellant, against the Western & Southern Indemnity Company, respondent, in aid of an execution on a judgment in the sum of $5000 which had been obtained by said Elynor Fischer against Arthur, also known as James A. Fenton of Columbia, Missouri, defendant, as damages for personal injuries. Fenton was alleged to have been doing business as Tiger Transfer Company. In that damage suit appellant herein, as plaintiff therein, alleged that an automobile in which she was riding was struck and wrecked on Highway No. 40 near O'Fallon, Missouri, by a truck and trailer at that time owned by the said Fenton and driven by his servant.

Appellant, as garnisher, duly filed her interrogatories and respondent, as garnishee, filed its answers thereto in which it admitted that it had issued to the said Fenton its policy of insurance providing for indemnity in the maximum amount of $5000 for injuries to any one person, but denied any indebtedness under said policy. Garnisher denied garnishee's answers to interrogatories and alleged in substance that garnishee was indebted to the said Fenton in the amount of said judgment by virtue of the policy of insurance mentioned. Garnisher alleged, and the evidence showed, that said policy insured the said Fenton against loss from liability imposed by law for damages by reason of the ownership of the truck and trailer mentioned; that it provided, among other things, that the insurer would give prompt and efficient service in investigating accidents and claims and in defending any suit brought against the said Fenton under said policy, and pay, in addition to damages, all expenses incurred for investigation, negotiation or defense, and all costs taxed against the assured in any legal proceeding defended by the insurer, all interest accruing thereon, and that the solvency of the assured would not release the insurer from said obligations. Garnisher further alleged, and the evidence showed, the obtaining of the said judgment and that it had become final; that garnishee had taken full charge of said damage suit until the morning of June 21, 1933, when it was called for trial, and that with all of the witnesses for defendant in said suit present in court, garnishee without any notice to Fenton, the defendant in said suit, withdrew and allowed judgment to go against defendant therein in the sum of $5000 and

costs; that garnishee failed and refused to pay said judgment, and that Fenton was insolvent.

Garnishee filed its amended reply which contained a general denial and allegations to the effect that Fenton, the assured, though given repeated and timely warning by garnishee of the necessity for and of the desire of garnishee for said assured's cooperation, failed and refused to cooperate with garnishee in the defense and preparation for the defense of said damage suit as required by the terms of said policy of insurance, and had thereby at the time of said judgment and prior thereto forfeited any rights he ever had under said policy of insurance. Garnisher filed a general denial to said amended reply.

This garnishment proceeding was tried before the court and a jury and resulted in a verdict and judgment for garnishee. After an unavailing motion for new trial, garnisher brings the case to this court by appeal.

John C. Thomas, an investigator for garnishee, testified from records of garnishee that the accident out of which the claim of garnisher against Fenton arose occurred on October 8, 1931; that several letters were written by a representative of garnishee to Fenton requesting him to call at garnishee's office in St. Louis to discuss the accident, the last of said letters being dated May 6, 1933, but that Fenton did not answer the letters or respond to the request; that in April, 1933, the witness passed through Columbia, Missouri, where Fenton had his place of business, and had a telephone conversation with Fenton and told Fenton that he wished to converse with him relative to the suits pending against Fenton in the circuit court of the city of St. Louis growing out of the accident; that he requested Fenton to remain where he was until the witness could drive over to meet him to converse with him; that Fenton told him he was not going to stay there; that he was leaving and clould not be bothered about any suits he had pending against him in court; that witness told Fenton over the 'phone that the suits against him were for an amount in excess of the coverage of his policy but that Fenton refused to stay where he was until the witness could drive over to meet him; that Fenton stated he was not interested.

The witness gave further testimony with respect to preparations that were made by garnishee to defend Fenton in another case against him growing out of the same accident and covered by the same policy as the one involved herein, which case had been set for trial on May 8, 1933. He further testified that on June 16, 1933, he saw Fenton at his farm near Columbia, Missouri, in company with Curtis Nienaber of the Tiger Transfer Company office, at which time he requested Fenton to be present for the trial in the case of Elynor Fischer (plaintiff garnisher herein) against Fenton, which was then set for June 21, 1933, but that Fenton told him he

was not going to go to the trial. The witness identified a number of copies of letters, which were marked as exhibits and introduced in evidence, taken from the records of the garnishee addressed to Fenton, dated on various dates beginning with December 26, 1931, the last one being dated May 6, 1932, requesting Fenton to call at the office of garnishee in St. Louis to discuss the facts in connection with the accident of October 8, 1931, and the suits pending against Fenton.

Witness Thomas further testified that garnishee made preparations to defend the Elynor Fischer case by having subpoenas issued and served on various witnesses; that the witnesses were in St. Louis for the trial on June 21, 1933; that he was in court on that date; that Fenton did not appear and that the garnishee thereupon withdrew from the defense of the case.

The witness testified at considerable length with respect to the trouble he had in finding Fenton in Columbia on May 3rd and May 4th, 1933, on which occasion Fenton told him "that he was not a damn bit interested in any insurance company; that he did not have a damn thing that anybody could get and that he had no intentions of appearing in St. Louis in court." The witness testified that he talked with Fenton further on that occasion and that Fenton finally agreed that he would think the matter over and meet the witness the following morning in the transfer company's office; that the witness went to the transfer company's office the next morning (May 4th) and that they resumed their conversation; that Fenton asked the witness what the suit was all about and the witness asked Fenton if he had not received the letters; that Fenton said, "Oh, yes, I got your letters;" that the witness said to Fenton "Didn't they convey to you the message what this was about, that you had been sued, that you were a defendant in lawsuits now pending in the Circuit Court of the City of St. Louis?"; that Fenton answered: "Yes, sir, I know that." The witness was asked whether or not he had made a request of Fenton to come to St. Louis for the trial of the case, and answered: "I did, yes, sir; and furnish transportation to get him here, made an agreement with George E. Lawhorn at that time. Mr. Fenton was present when that agreement was made that Mr. Lawhorn would call on him either on Sunday afternoon or early the following Monday morning and furnish him transportation and other expenses in St. Louis and be here at nine o'clock and attend trial of one of these cases of Fischer vs. Fenton." The witness further testified that Fenton promised to be in St. Louis if the transportation was furnished; that Fenton afterwards told witness that Mr. Lawhorn did appear to take Fenton to St. Louis on that occasion but Fenton did not appear at that time in court in St. Louis. The occasion referred to was the trial setting of the other case arising out of the same accident and covered by the same

policy as herein involved which was then set for May 8, 1933. The witness further testified that on June 16, 1933, he again saw Fenton in Columbia, Missouri, informed Fenton that the case against him (referring to the case of Elynor Fischer, garnisher herein, against Fenton) was set for June 21st and that witness had been sent as the representative of the Western & Southern Indemnity Company to demand Fenton's presence in court on that date; that he told Fenton that the amount sued for was in excess of his policy coverage; that Fenton told witness that witness was back down there singing that same old song and that he (Fenton) did not give a damn about any lawsuits; that he did not care about any executions; that he did not care about any judgments. Thomas further testified: "I said, well, Mr. Fenton, will you extend to me the courtesy to tell me now whether you will or will not be there on Wednesday, June 21st, when this case is set for trial? I told him then, you failed me before. You told me you would be there and you never showed up. I said it is my understanding that Mr. Lawhorn called on you and tried to get you to come. He said, 'That is right. George did come and try to get me to go but why in the hell should I go to St. Louis to attend a lawsuit? I have got nothing they can get. They cannot bother me and I am not interested and I am not going to go.' I said you be there and see Mr. Wishon when this case is set on June 21st or when it is called. He said, 'I won't be there.' That is the conversation that took place in the presence of Mr. Nienaber."

Curtis Nienaber, called as a witness for garnishee, gave testimony corroborating the testimony of John Thomas with respect to the visit by Thomas to Fenton on June 16, 1933, and that Fenton said he would not come to St. Louis; that Fenton said he already had one judgment against him and he did not have anything and he did not give a damn if they got another.

Ernest P. Brinkman testified on behalf of garnisher that he represented garnisher as plaintiff in the case of Elynor Fischer vs. Fenton; that garnishee's counsel for defendant in that case had told him that they would be ready for trial on June 21, 1933; that on that date plaintiff, through her counsel, announced ready for trial, at which time all of defendant's witnesses were in court; that garnishee's counsel then, without any delay, announced to the court their withdrawal from the case and that they did withdraw from the case; that prior to the withdrawal garnishee's counsel made no effort to have the case continued.

Arthur Fenton, the assured, who was defendant in the damage suit of Elynor Fischer vs. Arthur Fenton, testified on behalf of garnisher that in April, 1933, he did not have an office with a telephone; that he spent his time on a farm east of Columbia, Missouri, and did not have a telephone there and did not live there; that he usually left that place at dark, about 6 P. M.; that he

had no telephone conversation with the witness Thomas in April, 1933. The witness further testified that shortly before June 19, 1933, some man came to see him about the Elynor Fischer case; that the man said he had a trial coming on down in St. Louis and wanted witness to be there; that he told the man what his circumstances were; that he didn't have any money; that he was up against it and could not make the trip; that the man wanted to know if the witness could not borrow the money to make the trip, but that he told the man that that was his trouble at that time, that he had borrowed too much; that it would have cost something for expenses to come down to St. Louis; that the man did not say whether the insurance company would pay such expenses. He was asked to state his reason for not being present in St. Louis for the trial but, on objection by garnishee, he was not permitted to give his reason.

Fenton further testified that he never did say that he wouldn't be at the trial. He denied that he had ever said: "To hell with that insurance company," or any other words to that effect. He denied that he ever told any one from the insurance company that he would not attend the trial. On cross-examination the witness testified that he told Mr. Thomas that he would get to the trial if he had any chance of getting there. He admitted that he was not at the trial of the case. He further testified that he got several letters about the cases against him from the garnishee and that he did not answer any of them. When asked to relate the conversation that occurred between himself and Mr. Thomas in Columbia, Missouri, the witness answered: "To be frank, I don't remember it. I do know he was there and said he was the insurance man and told me his name, but I forgot his name. He told me he was on the insurance trial. He asked me to be there. I told him it was impossible for me to be there because I didn't have any money." He further testified that he saw the same man there the next morning and that the man asked him to be at the trial of one of these cases; that he didn't remember which of the cases was referred to. Toward the conclusion of the cross-examination Fenton was asked by the court: "Did you request that man from the insurance company to send you the necessary expenses for a trip to St. Louis?" The witness answered: "No, I did not. I thought of it, but I did not feel like—

"The Court: Did you, or did you not? A. He did not ask me, no sir.

"Q. I mean did you ask him? A. No, I did not ask him."

Garnisher contends that under the evidence and pleadings garnishee failed as a matter of law to make a submissible case for the jury under its affirmative defense of the alleged failure of Fenton to cooperate with garnishee in the trial of the damage suit. Garnisher's argument on this is based upon the assumption that the

testimony of Fenton must prevail over that of garnishee's witnesses and that Fenton's testimony shows that garnishee did not furnish Fenton with transportation and expense money to attend the trial of the damage suit against him. Garnisher also argues that the failure of garnishee to furnish such expenses shows garnishee was not acting in good faith. Garnisher further argues that the presence of the assured at the trial of the damage suit was not necessary to a proper defense thereof because Fenton was not a witness to the accident.

The conflict in the evidence was, of course, a matter for the jury to pass upon and determine. As to garnishee's good faith there is evidence showing that garnishee did everything reasonably within its power to have Fenton cooperate with it, as he was obligated to do, in the preparation and the defense but that he flatly refused to do so.

If the evidence of garnishee is believed, Fenton's course of conduct was such as to make it useless for garnishee to make any further efforts to get Fenton to attend the trial of the damage suit against him. The evidence showing Fenton's refusal to attend the trial of the Robert Fischer case, which was set a little more than a month before the Elynor Fischer case, after having promised to do so and after having had transportation and expenses offered to him and arranged for, together with the evidence showing his unequivocal and emphatic statement: "Why in the hell should I go to St. Louis to attend a lawsuit. I've got nothing they can get. They can't bother me. I am not interested. I am not going to go. I won't be there," if believed by the jury (and it evidently was believed as shown by the verdict), as well as the admitted fact that he did not attend the trial of either of the cases against him, was sufficient to show a material breach of his insurance contract with the garnishee wherein, as the assured therein, he had agreed that "whenever requested by the company, the assured shall aid in effecting a settlement, obtaining information and evidence, the attendance of witnesses and in prosecuting appeals, and at all times, render all possible cooperation and assistance." [Bauman v. Western & Southern Indemnity Co., 230 Mo. App. 835, 77 S. W. (2d) 496; Robert C. Fischer v. Western & Southern Indemnity Co., (Mo. App.), 106 S. W. (2d) 490.]

As to garnishee's failure to furnish Fenton with expense money, it will be noted that Fenton admitted that he did not ask garnishee's representative to send him such expense money to attend the trial.

In Fischer v. Western & Southern Indemnity Co. (Mo. App.), 106 S. W. (2d) 490, a companion case to the case at bar growing out of the same accident and covered by the same policy of insurance, this court, in reversing a judgment which garnisher had obtained against garnishee, held that the initial obligation to be

present at the trial was already upon the assured as the defendant in the damage suit, and that the garnishee was not required to buy his attendance by advancing him money for expenses unless it was informed that without such advancement the attendance of the assured would not be possible. Our holding in that case is applicable in this case.

Garnisher further contends that garnishee failed to make a submissible case for the jury because it is admitted by the pleadings that garnishee withdrew from the original case without notifying the assured of its withdrawal or intention to withdraw. The case of Ornellas v. Moynihan (Mo. App.), 16 S. W. (2d) 1007, among others, is cited in support of this contention. It is true this court in the Ornellas case did say that if appellant therein wished to withdraw from the case on account of the failure of assured to deliver to it the copy of the summons and petition, it was its duty to inform the assured and liberate him to make such defense thereto in his own behalf as he saw fit. A mere reading of the Ornellas case, however, will disclose at once that it is clearly distinguishable from the case at bar on the facts. That case involved a mere failure of the assured to deliver to the insurer the copy of the summons which had been left at the home of the assured's mother. The assured therein had no knowledge thereof until months thereafter. He was working in another state and did not learn of the suit filed against him until after a default judgment had been taken against him. There was no evidence in that case whatsoever to show an intentional, absolute and unqualified refusal before the trial to cooperate with the insurer therein in the defense of the main case, such as we have in the case at bar. Under circumstances such as appeared in the Ornellas case, it is undoubtedly incumbent upon the insurer to notify the assured of the insurer's withdrawal from the defense of the main case to give the assured an opportunity to make arrangements for his own defense of the case against him if he desires to do so. This is so because of the peculiar nature of the contract wherein the insurer is given the right to conduct such defense.

The *failure* of an assured to cooperate with his insurer under such a contract because of mistake, oversight, misunderstanding or matters beyond the assured's control presents an entirely different situation from that in which there appears a deliberate, intentional and positive *refusal* by the assured to cooperate, in so far as the duty of the insurer to give notice of its withdrawal from the defense of the assured is concerned. In the case of mere *failure* to cooperate, there may be a reasonable excuse therefor. Notice of withdrawal in such a situation serves a useful purpose. But where there is an intentional, positive *refusal* to cooperate after notice and a request for such cooperation, it must, in reason, be held to be an act of such

absolute finality as to be equivalent to a declaration by the assured that he does not wish to make and will not make any defense to the suit against him. Where it appears, as it does in the case at bar, and we must take it to be true since the jury found it to be true, that the assured, after having been repeatedly notified and even urged to comply with his contract and cooperate in his own defense by attending the trial, intentionally, unequivocally and unqualifiedly refuses to attend the trial and states that he is not interested in any judgment that may be procured against him and actually does remain away from the trial, the law does not require an insurer to go through the useless performance of notifying the assured of a thing which he already knows—that he has breached the cooperation clause of his contract and that the insurer will treat it as a breach.

Garnisher further contends that the evidence showing the preparations made by garnishee for the defense of the case of Robert Fischer against Fenton was not admissible in this garnishment proceeding which grows out of the case of Elynor Fischer, garnisher herein, against the said Fenton. We are unable to agree with this contention of garnisher. It is true, as garnisher contends, each case must be tried on its individual merits, but that does not mean that competent and relevant evidence should have been rejected because it happened to relate to the companion case. The defendant in each of the damage suit cases was the same Fenton. The same garnishee was represented by the same counsel as attorneys for the same Fenton in both damage suits. Garnisher's counsel were also counsel for plaintiffs in both damage suits against Fenton. In preparing for such defenses, garnishee could not investigate the accident and prepare for the defense in one damage suit without at the same time preparing the defense in the other damage suit. The investigation of the accident and the preparation for the defense in both suits were inseparable because the defendant in both suits was the same Fenton who was covered by the same policy, and the plaintiffs in each suit, Robert Fischer in the one and Elynor Fischer, garnisher herein, in the other, were claiming damages arising out of the same accident. We hold that the court committed no error in this respect.

Garnisher makes numerous complaints against Instruction No. 2 given on behalf of garnishee. Many such complaints are based upon garnisher's erroneous contention that Fenton's absolute refusal to attend the trial did not constitute a material breach of his contract to cooperate with the insurer. What we have heretofore said in a sufficient answer to the criticisms of the instruction based on such contention. [Bauman v. Western & Southern Indemnity Co., 230 Mo. App. 835, 77 S. W. (2d) 496; Fischer v. Western & Southern Indemnity Co. (Mo. App.), 106 S. W. (2d) 490.]

Instruction No. 2, after telling the jury that it was the duty of Fenton, whenever requested by the Western & Southern Indemnity Company, to at all times render all possible cooperation and assistance in the defense of any suit which might be brought against the said Fenton arising out of any personal injury and property damage claim covered by the contract of indemnity insurance, went on:

"and if you find and believe from the evidence in this case that in the case of suit of Elynor Fischer against said Fenton, set for trial in the Circuit Court of the City of St. Louis, Missouri, on the 21st day of June, 1933, the said Fenton, without good cause or reason, failed to appear in said Court on said trial day after having received notice from the Western & Southern Indemnity Company of said case or suit being set for trial on said day, if you so find, and if you further find from the evidence in this case that the said Western & Southern Indemnity Company in good faith requested said Fenton to be present at said trial and made such request in time to reasonably enable him to be present in said Court on said day, if it did, and if you further find from the evidence in this case that said Fenton communicated no reasonable excuse to the Western & Southern Indemnity Company on or before June 21, 1933, for not attending said Court on said trial day, if he did not attend, and if you then further find from the evidence in this case that the Garnishee, Western & Southern Indemnity Company, on said 21st day of June, 1933, through its attorneys withdrew from the defense of said suit which up to said time it had been defending for the said Fenton, and that it withdrew from said defense on said day on the stated ground that said Fenton without good cause or reason, had failed to comply with the cooperation clause of his said contract of indemnity insurance, then and in such event, if you so find, you are instructed that the said Fenton breached his said contract of indemnity insurance and the said Western & Southern Indemnity Company was justified in withdrawing from the defense of said suit and denying coverage under its said contract or policy of indemnity insurance, then, and in that event, your verdict will be in favor of said Western & Southern Indemnity Company and against the Garnisher, Elynor Fischer."

We are of the opinion that the instruction complained of contained all the necessary elements required to be found by the jury as a prerequisite to a verdict for garnishee. It was within the pleadings and was based upon the evidence and was, if anything, in some respects more favorable to garnisher than was necessary in view of the facts in the case. Garnisher complains that the instruction was misleading in that it erroneously referred to the "terms" of the contract instead of "conditions," and that it erroneously limited the contract to one of "indemnity." We do not believe that the jury

could have been misled in this respect. We are not authorized to reverse a judgment unless we are satisfied that the error complained of was such as to materially affect the merits of the action. We are satisfied that the use of the words mentioned did not have any such effect. [Section 1062, R. S. 1929 (Mo. St. Anno., sec. 1062, p. 1352).]

Garnisher complains against Instruction No. 3 given on behalf of garnishee. The instruction told the jury that under the law garnishee has no greater rights than had Fenton under the contract of insurance, and, if the jury believed and found from the evidence under the other instructions given that Fenton breached his contract of insurance by failing to cooperate with the indemnity company in the defense of the case of Fischer v. Fenton mentioned in the evidence as set for trial on June 21, 1933, after the indemnity company in good faith had requested such cooperation and had requested the presence of Fenton at said trial, then, in such event, the garnisher would not be entitled to recover under the contract of insurance and the verdict should be in favor of the indemnity company. It is contended by garnisher that the instruction is an abstract declaration of law and does not apply to any evidence in the case; that it was repetitious, having been covered by Instruction No. 2, and was subject to the same objections as those directed to Instruction No. 2. The case of Klaber v. C. R. I. & P. Ry. Co., 225 Mo. App. 940, 33 S. W. (2d) 149, is cited by garnisher in support of this contention. The instruction found to be erroneous in that case contained an incorrect declaration of law with respect to the elements involved therein. That was a slander suit, and the instruction closed with the words "and verdict must be for plaintiff." We have no such question here. We rule against garnisher on this point.

Garnisher contends that Instruction No. 4 given on behalf of garnishee was an erroneous declaration of law and invaded the province of the jury; that it was an abstract proposition and broader than the evidence. The instruction told the jury that under the contract of insurance no obligation rested upon the indemnity company to subpoena James A. Fenton to the trial in the case of Fischer v. Fenton, nor was it incumbent upon the indemnity company to offer to feed and house said Fenton while attending the trial in order to secure his presence at the trial and his cooperation in the defense thereof. We think this instruction is not open to the objections made by the garnisher. In view of the evidence showing Fenton's absolute and final refusal to attend the trial in which he himself was the defendant and of which he had full and ample notice, and which he was repeatedly urged to attend, we think it was proper for the court to advise the jury in an instruction that no obligation rested upon the garnishee to subpoena Fenton to come to his own trial. Garnisher cites Finkle v. Western Automobile Ins. Co., 224 Mo. App. 285, 26 S. W. (2d) 843, and Hoff v. St. Paul-

Mercury Indemnity Co. of St. Paul, 74 Fed. (2d) 689, in support of this contention. We find nothing in the Finkle case that would warrant us in holding the instruction erroneous. In the Hoff case, cited by garnisher, the trial judge gave judgment upon the policy against the indemnity company because of its failure to subpoena Basso, the assured, for the trial, which failure, so the trial judge held, showed a lack of diligence on the part of the indemnity company in defending the action. In reversing the judgment in that case the Federal Circuit Court of Appeals held that where the evidence was conflicting as to whether the assured's failure to attend the trial of the action which resulted in a judgment against him was due to the assured's failure to cooperate with the insurer, or to the insurer's refusal to pay the assured's expenses, the question should have been submitted to the jury even though the insurer had not subpoenaed the assured to be present at the trial.

In the Hoff case, the court further held that although the indemnity company had promised in the policy to pay all expenses of defending the action, that did not require such expenses to be paid in advance; that Basso, the assured therein, was bound to go to the trial in which he was defendant at his own initial expense, unless he had some excuse. Furthermore, the court in the Hoff case not only did not decide that it was necessary for the indemnity company therein to subpoena Basso, the assured, to attend his own trial as defendant, but, on the contrary, said:

"There is indeed some doubt in our minds whether such a subpoena would have been valid at all; Basso, not the company, was defendant in the action of Hoff v. Basso. True, the company was conducting the defense, and had retained Basso's attorney for him, but whether a subpoena served by a man's own attorney upon himself in a cause in which he was at once witness and party, would be a valid writ we have been unable to learn from the books. Be that as it may, it was no duty of the company to do so; . . ." [Hoff v. St. Paul-Mercury Indemnity Co. of St. Paul, 74 Fed. (2d) 689, 690.]

It appears, therefore, that the Hoff case instead of supporting garnisher's contention herein holds to the contrary. We find nothing in Instruction No. 4 that would warrant a reversal of the judgment herein.

Garnisher complains of Instruction No. 5 given on behalf of garnishee. The instruction told the jury that under the contract of insurance it was not required of the garnishee company to offer to pay the expenses of Fenton in order to procure his presence at the trial of the case of Fischer v. Fenton; that it was Fenton's obligation to be present at said trial if he was requested, in good faith, by the garnishee company to be present and in ample time to enable him to be present, unless, on or before said date, he, in good faith,

communicated to the garnishee company some reasonable excuse for his failure to attend court on the day said cause was set for trial. We have carefully read garnisher's criticisms of the above instruction and find nothing therein that would warrant us in reversing the judgment. [See Fischer v. Western & Southern Indemnity Co. (Mo. App.), 106 S. W. (2d) 490, 494.]

During the trial herein, Fenton was asked what was his reason for not being at the trial of the damage suit against him, and as to his financial condition at that time. On objection by garnishee the court refused to permit him to answer the questions on the ground that it was not proper rebuttal. We think such ruling of the court was erroneous. However, Fenton was permitted to testify, at other stages of his examination, at length as to his reasons for not attending the trial of the damage suit against him and as to his financial condition as we have heretofore shown. Garnisher did not make any offer of proof at this stage of the trial to show that if permitted, Fenton would give other and additional reasons for his nonattendance at the trial. Not being able to say that these two rulings of the court prejudiced garnisher and materially affected the merits of the action, we rule that the errors were harmless. [Section 1062, R. S. Mo. 1929 (Mo. St. Anno., sec. 1062, p. 1352).]

Garnisher presents other points of complaint which we have examined, but we find nothing therein which would warrant us in reversing the judgment. The judgment is, therefore, affirmed. *Becker, J.*, concurs; *Hostetter, P. J.*, absent.