Ralph MEYERS and Ollive Meyers, His Wife, (Plaintiffs) Respondents,

v.

Daryl Dean SMITH, (Defendant) Appellant.

No. 30902.

St. Louis Court of Appeals.

Missouri.

Sept. 19, 1961.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellant.

Dearing, Richeson & Weier, Hillsboro, Melvin Englehart, Jefferson City, for respondents.

WOLFE, Judge.

This is an action in which the plaintiff seeks to recover damages for the death of their daughter. It was alleged that the death was caused by the defendant's negligence in the operation of an automobile in which the deceased child was riding. The trial was to a jury, which returned a verdict for the plaintiff in the sum of $15,000, and the defendant appeals from the resulting judgment.

The facts of the case, about which there appears to be no dispute, are that the defendant and five other high school children had attended a high school "prom" on May 17, 1955. Daryl Dean Smith had borrowed his father's car for the occasion. He drove to the prom with a girl friend, and on the way he picked up another couple who were attending the affair. At the prom the four of them met Ruth Meyers and her escort, Harold Owens. At about eleven p. m. they all decided to go for a ride together. Harold Owens had a car in which he and Ruth Meyers had come to the prom. Owens and the Meyers girl went in Owens' car to a filling station, where Owens parked the car that he was driving and he and the Meyers girl got into the car driven by defendant Daryl Smith.

Some time later the car, traveling at a fast rate of speed, went off the road at a curve and struck a tree, fatally injuring Ruth Meyers. A state highway patrolman testified that he arrived at the scene of the accident while Ruth Meyers and Harold Owens were pinned in the car. They were in the front seat between the right door and the door post. A wrecker was called to pull the center door post back so that the two injured children could be taken out. The patrolman talked to Daryl Smith, the defendant, and Smith told him that he was driving the car at the time of the accident. Smith told the officer that he was driving at 55 to 60 miles per hour, and that when he started to turn the car for the curve, his elbow hit the girl next to him and he could not make the turn.

Smith made the same statement to State Patrolman Brooks, who testified that Smith accompanied him in the ambulance which

took Owens to the hospital at Bonne Terre. Smith had also told a Mr. Aslinger at the scene of the accident that he was the driver of the car. On the day after the accident defendant met the plaintiff, father of Ruth, at the hospital to which she had been taken, and he told Mr. Meyers that he, Smith, was driving the car at the time of the accident.

Smith also signed a statement for an insurance adjuster six days after the accident, in which statement he said that he was driving his father's car at about 11:30 p. m. on May 17, 1955, and that he was in a straight stretch of the highway, traveling at about 55 miles per hour, approaching a curve. He said that the car entered the curve, but from that point on he did not know exactly what happened but the car left the highway and the right side of the car struck a tree.

The defendant, testifying in his own behalf, stated that he was not driving the car. He said that Ruth Meyers had asked to drive, and that he had stopped and permitted her to take the wheel. He said that Ruth and the Owens boy after that were in the front seat, and that the rest of them were in the rear seat and were so seated when the car went off the road. The other surviving passengers all testified that Ruth Meyers was driving at the time the car left the highway. The defendant admitted that he had told the persons who testified in the plaintiff's case that he was driving, but said that he did so because he had promised his father that he would not let any one else drive the car.

This case was first tried on December 16, 1955, and the trial resulted in a verdict for the plaintiff in the sum of $15,000. Upon appeal to the Supreme Court of Missouri, the cause was reversed and remanded because incompetent and prejudicial testimony had been admitted in evidence. Meyers v. Smith, Mo.Sup., 300 S.W.2d 474.

■ The first point raised upon the appeal before us is that the minor child defendant was not represented by "an acting guardian ad litem". The only mention of a guardian ad litem in the transcript of record are two recitals of his appointment on December 16, 1955. The parties announced ready for trial on that date, and the record states: "Ralph Smith is by the court appointed guardian ad litem for defendant Daryl Dean Smith, and files his acceptance and answer." Ralph Smith was the father of the defendant, Daryl Smith. It is first contended that owing to the long time between the appointment of the guardian ad litem and the judgment against the defendant, the defendant was without a guardian ad litem at the time of trial. There is no basis for such an assertion, as the authority of a guardian ad litem continues until the termination of the cause. 43 C.J.S. Infants § 113, p. 310; West St. Louis Trust Co. of St. Louis v. Brokaw, 232 Mo.App. 209, 102 S.W.2d 792. The case immediately above cited deals with the duties of a next friend rather than a guardian ad litem, but there is little, if any, difference between their functions and powers. Campbell v. Campbell, 350 Mo. 169, 165 S.W.2d 851; Crawford v. Amusement Syndicate Co., Mo.Sup., 37 S.W.2d 581. It is alternately asserted that if the passage of time was not sufficient, the court erred in not requiring Ralph Smith to perform his duties. We are not informed of any duties that he did not perform. It is stated in appellant's brief that he was not in court, and that the record does not recite any act that he performed. Throughout both trials the defendant was represented by the same counsel, and apparently counsel diligently called all available witnesses that he thought necessary for the defense. He points to no dereliction of duty, but asks us to presume it because the record fails to show a guardian present in court. We cannot, of course, presume inattention to duties or any other improper action upon the part of the guardian ad litem or the court. The presumption is that the interests of the minor were carefully protected by the court and the guardian ad

litem. Spotts v. Spotts, 331 Mo. 917, 55 S.W.2d 977, loc. cit. 983, 87 A.L.R. 660. There is no merit to the point raised.

**■** The second point raised is that the court erred in overruling defendant's motion to declare a mistrial and discharge the jury because of a statement made by plaintiff's counsel in his opening statement to the jury. The record on this is as follows:

"Mr. Dearing: * * * We are going to ask you to return under what is termed a statutory allowance, which at that time was $15,000.00, for and on behalf of the father and mother of this child. I thank you.

"Mr. Roberts: (Out of the hearing of the jury) At this time I again move for the discharge of the jury because of reference in the opening statement to the fact that the statutory limit has been changed.

"The Court: Overruled."

**■** The only point raised by the objection and also by the motion for a new trial goes to the words "which at the time was $15,000.00." It is contended on trial and here that this suggested to the jury that the limit had been increased. We do not believe that the words would have had any connotation to the jury other than what they say. The amount may have been raised or lowered from all that could be gleaned from the statement. The court could not be held in error for not directing a mistrial because of this. On appeal for the first time the defendant raises the point that the words "statutory allowance" were prejudicially erroneous and that the court should have directed a mistrial because of them. Ordinarily where no objection is made to the testimony or argument in the trial court, the appellant may not assert on appeal that the trial court erred in respect to permitting the argument or testimony.

Hoffman v. St. Louis Public Service Co., Mo.Sup., 255 S.W.2d 736. This claimed error does not fall within any exceptions to the rule. Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598.

It is of course true that Section 537.090 RSMo 1949, V.A.M.S., places a limitation on the amount to be recovered, and that section is not an allowance of an amount, but there is no contention that the jury was not properly instructed on the measure of damages, so the statement does not appear to have been prejudicially erroneous. A statement quite similar was held not to be so in Shepard v. Harris, Mo.Sup., 329 S.W. 2d 1.

The last point raised is that the trial court erred in not granting a new trial upon the ground that the verdict is against the weight of the evidence. It is not contended that the plaintiff failed to make a submissible case. The sole contention is that the jury should have believed the defendant when he said that his previous statements that he was driving the car were lies, and that both he and the passengers were testifying to the truth at the trial.

**■** An assignment that the verdict is against the weight of the evidence presents a matter which is essentially for the trial court. Robbins v. Robbins, Mo.Sup., 328 S.W.2d 552. The jury has the right to believe or disbelieve any part of the oral testimony presented, and where there is evidence to support its conclusions, an appellate court will not set aside the verdict. That right is reserved to the trial court. Robbins v. Robbins, supra; Gould v. M. F. A. Mutual Insurance Company, Mo.App., 331 S.W.2d 663.

The judgment is affirmed.

ANDERSON, P. J., and RUDDY, J., concur.