Ralph MEYERS et al., Plaintiffs-Respondents,

v.

Daryl Dean SMITH, Defendant,

Western Casualty and Surety Company, of Fort Scott, Kansas, Garnishee-Appellant.

No. 49882.

Supreme Court of Missouri,

Division No. 1.

Jan. 13, 1964.

Motion to Strike Portion of Opinion, for Rehearing or to Transfer to Court En Banc Denied Feb. 10, 1964.

Roberts & Roberts, J. Richard Roberts, Farmington, for appellant.

Dearing, Richeson & Weier, Hillsboro, Melvin Englehart, Jefferson City, for plaintiffs-respondents.

DALTON, Presiding Judge.

This is an appeal by garnishee from a $17,412.50 judgment entered against it in a garnishment proceeding, being the amount of a judgment theretofore rendered in favor of plaintiffs and against defendant Daryl Dean Smith (with accrued interest) in an action for the wrongful death of plaintiffs' fourteen-year-old daughter, Ruth Meyers.

The action for wrongful death was tried three times and reviewed twice on appeal. See Meyers v. Smith, Mo.Sup., 300 S.W.2d 474, where a judgment for $15,000 was reversed and the cause remanded for error in the admission of evidence, and Meyers v. Smith, Mo.App., 349 S.W.2d 412, wherein a judgment for plaintiffs for $15,000 was affirmed on appeal.

In the trial of the garnishment proceeding the parties filed what has been termed a "Stipulation of Facts" but what is, in truth, a stipulation that certain evidentiary facts (not ultimate facts) were true. (See Perry v. Wiggins, 8 Cir., 57 F.2d 622, 625 [7]; Murphy v. Doniphan Tel. Co., 347 Mo. 372, 147 S.W.2d 616, 619 [5 et seq.].) The stipulation contained the further agreement that " * * * the right is preserved to the parties to challenge the propriety of the court's consideration of these facts; and it is further understood by and between the parties thereto that each party has the right to introduce additional evidence at the trial of the issues herein going to any of the following facts by way of elaboration thereon or explanation thereof but not in controversion thereof, and that each of the parties has the right to introduce any additional evidence as to any other facts not hereinbelow stipulated."

No additional evidence was offered or received at the trial and, on the record presented, the court (without the aid of a jury) found the issues for the plaintiffs and against the garnishee and entered judgment, as stated. Garnishee has appealed and has stated the facts substantially as follows:

On May 17, 1955, a 1953 Ford automobile occupied by six teenagers was involved in a one-car collision, where the automobile left the highway and collided with a tree. One of the occupants of the automobile was Ruth Meyers, plaintiffs' daughter, who died as a result of the collision. Another occupant was defendant Daryl Dean Smith, age sixteen, against whom the mentioned $15,000 judgment was rendered. The other occupants of the automobile were Margarita Barker (apparently age fourteen); Paul Head, age sixteen; Jerry Head, age fourteen; and Harold Owens, age seventeen.

The automobile involved in the collision was owned by Ralph Smith, the father of Daryl Dean Smith. Prior to May 17, 1955, the garnishee had issued a policy of insurance insuring Ralph Smith and the Ford automobile in question. The policy contained a clause commonly known as an "omnibus clause" to the effect that "the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

The policy contained a further provision, as follows: "16. Assistance and Cooperation of the Insured: The insured shall cooperate with the company and upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits."

On May 17, 1955, and prior to the date of the collision, Ralph Smith had given his son permission to use the mentioned Ford automobile, the only restriction being that only Daryl Dean should drive it. Whether or not he was so operating the automobile at the time of the collision was the issue thrice tried to a jury.

Following the collision and death of Ruth Meyers the garnishee employed the law firm of Roberts & Roberts to make an investigation of the occurrence. In the process of this investigation Daryl Dean Smith signed a written statement (not dated) wherein he stated that he was the driver of the automobile at the time of the collision, and was driving west of Doe Run, Missouri, on Highway "W". "The road at that point is blacktopped, 2 lane. I was going about 55 miles per hour with my head lights on bright when we suddenly came to a very sharp curve. I started turning with the curve which was to my right and my arm struck the arm of Ruth Meyers who was sitting next to me and I did not make the turn completely. My car went off the edge of the road on my left, hit the shoulder, came back to the highway and then went back to my left, crossed the ditch and ran into a tree. I was thrown from the car before it struck the tree." The persons in the back seat were also thrown out, while Ruth Meyers and Harold Owens were pinned in the wreckage in the front seat, on the right-hand side where the cowl and door struck the tree.

The other surviving occupants of the automobile also first advised members of the law firm of Roberts & Roberts that Daryl Dean Smith was driving at the time of the collision.

Thereafter, on June 27, 1955, a member of the law firm was advised by the parents of Daryl Dean Smith that he was not driving the automobile at the time of the collision, but rather Ruth Meyers had been the driver. This was the first information obtained by garnishee that Daryl Dean Smith was now claiming that he was not the driver at the time of the collision.

On August 13, 1955, plaintiffs instituted the mentioned suit against Ralph and Daryl Dean Smith for damages on account of the death of their daughter and alleging that Daryl Dean Smith had negligently driven the Ford on the night of the collision. On August 17, 1955, Daryl Dean Smith and Ralph Smith executed to appellant-garnishee a Reservation of Rights Agreement and, thereafter, on September 1, 1955, Roberts & Roberts, at garnishee's direction, filed an answer on behalf of Ralph and Daryl Dean Smith. Plaintiffs subsequently dismissed as to defendant Ralph Smith.

In the three trials and two appeals of the wrongful death action Roberts & Roberts appeared as attorneys for Daryl Dean Smith by direction of garnishee and they were compensated by garnishee for their services. Before each trial the trial court was advised that a Reservation of Rights Agreement had been executed and that Daryl Dean Smith was being represented by Roberts & Roberts at the direction of garnishee and subject to the terms of the Reservation of Rights Agreement. Before each trial Roberts & Roberts advised defendant, Daryl Dean Smith, that they were appearing as representatives of garnishee; that he (Smith) was entitled to employ an attorney of his own choosing; and that Roberts & Roberts would cooperate with said attorney.

At each of the three trials Daryl Dean Smith testified that he was not the driver of the Ford when the collision occurred, but rather that Ruth Meyers was driving. He further testified at each trial that after the collision he asked the other passengers of the car to tell all who asked that he (Smith) was driving the car at the time of the collision. The surviving passengers of the car, who testified at the various jury trials, testified that Ruth Meyers had been driving and that Daryl Dean Smith requested them immediately after the collision to say he was the driver, and that they had so stated to

other persons. In each of the jury trials, plaintiffs presented considerable testimony from various witnesses that Daryl Dean Smith, following the collision, had advised them that he was the driver at the time of the collision.

At each of the circuit court trials the jury was instructed that before they could find for plaintiffs and against the defendant they had to find that defendant was the driver at the time of the collision and, conversely, that if they found Daryl Dean Smith was not driving that they should find for defendant, Daryl Dean Smith.

From June 27, 1955, through the date of the last trial between plaintiffs and defendant, Daryl Dean Smith complied with every request made of him by garnishee.

On this record the trial court entered judgment for plaintiffs and against garnishee, as stated, for the amount of the mentioned judgment, interest and costs. Motion for new trial was filed and overruled and garnishee filed notice of appeal.

The sole assignment on this appeal is that the court erred in entering judgment for plaintiffs and against the garnishee based upon the insurance contract issued by garnishee to Ralph Smith, *since defendant, Daryl Dean Smith, was not insured against claims arising from the collision occurring on May 17, 1955, because he breached a condition of said contract by failing to cooperate with the garnishee.* Appellant insists that the condition of cooperation was a condition precedent and the breach thereof prejudiced the garnishee, hence garnishee was not obligated to these plaintiffs on account of said policy of insurance.

■ Since this case was decided on the mentioned stipulation and exhibits attached, and by a Judge who heard no testimony, this Court does not accord to the trial court's findings the same deference which it would accord had that court personally heard oral evidence in support of plaintiffs' claim. Temperato v. Horstman, Mo.Sup.,

321 S.W.2d 657, 661[1]; Schwartz v. Shelby Const. Co., Mo.Sup., 338 S.W.2d 781, 788[6–8]; Giokaris v. Kincaid, Mo.Sup., 331 S.W.2d 633, 635[1]. This appeal, however, is governed by Supreme Court Rule 73.01, V.A.M.R. which, in part, provides that: "The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court. The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous * * *."

■■ Appellant concedes that plaintiffs are, in effect, the unnamed beneficiaries of the policy issued by it to Ralph Smith; and that, as such, they may bring this action against the appellant. Appellant insists that the plaintiffs occupy no better position than the insured would have occupied had he paid the judgment and then sought reimbursement from the company; and that the rule is well stated in Donlon v. American Motorists Ins. Co., Mo.App., 147 S.W.2d 176, 178[2], as follows: * * * where an injured person has recovered a judgment against an assured, and such person brings an action upon the judgment to recover the amount thereof from an insurance company whose policy covered the loss, the insurance company may assert any defense against the injured person which it might have asserted as a defense in an action brought against it by its assured." Of course, since Daryl Dean Smith is an insured under the policy by reason of the omnibus clause the rule applies to him and he is bound by all of the applicable conditions of the policy. It is then contended that he breached the conditions of the policy by his failure to cooperate with it, hence appellant says it would not have been liable to him, and that the company is not liable to plaintiffs.

Appellant argues that under the facts of this case the conflicting versions by defendant Smith as to the identity of the driver cannot be charged to an honest mistake or

misunderstanding; that defendant first advised appellant, not simply that he was the driver of the automobile, but he explained in detail how he was driving and how he lost control. He reported this version many times to others, not only on the night of the collision, but afterwards, and six days after the collision he executed a sworn statement wherein he stated he was driving. He not only took this position, but he asked other passengers to tell the same story to all who inquired, and they did so.

Appellant says that the basic and uncomplicated fact as to the identity of the driver could not have been forgotten by defendant Smith, who purposely and deliberately gave a false version to appellant after the collision, but later changed his version and tenaciously stayed with it. Appellant also says that the identity of the driver was a material fact; that, if he was not operating the automobile, he obviously had a valid defense, while if Ruth Meyers was driving the automobile when the vehicle left the road and collided with a tree, the appellant had the further valid defense of contributory negligence; and that in giving the appellant two versions concerning the identity of the operator of the automobile, one obviously false and the other true, defendant clearly failed to cooperate with appellant and appellant is relieved from liability under the policy.

Appellant also states that in the instant case it does not know at this date which of Smith's versions, as to the identity of the driver at the time of the collision, is the correct one; that the finding of the jury in the wrongful death action necessarily indicates that they accepted the first version; but that that finding does not necessarily compel the conclusion in this cause that Smith was driving. Appellant further states that the "insurer was in a position of having to present to the jury false testimony and in having its key witness, Smith, impeached by prior statements, one of which was under oath," and that one can only guess what would have happened "had Smith consistently told the truth, that is,

that he was the driver." Appellant also adds that "it needs no argument to sustain the proposition that insured's counsel was substantially prejudiced in a material respect when at the trial of the wrongful death action the credibility of each of his witnesses was impeached by their prior statements contrary to their trial testimony."

Appellant further states that, "The damage done by Smith's conflicting stories is readily apparent regardless of which version is true", and that, "If Smith's first version, that he was the driver, be accepted as the truth, his later position that he was not the driver, and his testimony to that effect certainly dealt the insurer a grievous blow in presenting any defense or attempting any settlement of the cause."

Under the pleadings and stipulation of facts two issues are presented, to wit: (1) Was Daryl Dean Smith operating the automobile at the time of the collision; and (2) if he was, did his conduct in thereafter making conflicting statements to the insurer so breach the insurance contract and so prejudice the insurer that plaintiffs, the judgment creditors of Daryl Dean Smith, are not entitled to recover in this proceeding?

Appellant's single assignment under points and authorities, as hereinbefore set out, in effect, concedes that Daryl Dean Smith was operating the automobile in question at the time of the collision and an assignment that Daryl Smith was not operating the automobile, if it had been made, would appear to conflict with the other assignment made and relied upon (See Rochon v. Preferred Accident Ins. Co. of New York, Supreme Court of Errors of Connecticut, 118 Conn. 190, 171 A. 429, 430), nevertheless we shall rule both questions in this opinion.

■■ Where a casualty is covered by liability insurance, our statutes, Section 379.195 and Section 379.200 RSMo 1959, V.

A.M.S., create a right on the part of the injured person which attaches as of the date of the occurrence. The payment of the loss, when the amount is established by a judgment in favor of the injured person against the insured, does not depend upon the satisfaction by the insured of the final judgment rendered against him. State ex rel. McCubbin v. Ginn, Mo.Sup., 347 S.W. 2d 119, 125[4]. However, in an action by the injured party against the insurer, after a judgment has been obtained by the injured party against the insured, the injured party stands in the shoes of the insured and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer, if the insured had paid the judgment to the injured party. Wackerle v. Pac. Employers' Ins. Co., 8th Cir., C.A., 219 F.2d 1, 7, cert. denied, 349 U.S. 955, 75 S.Ct. 884, 99 L.Ed. 1279; Bauman v. Western & Southern Indemnity Co., 230 Mo.App. 835, 77 S.W.2d 496, 498[2].

■ The provision of the policy for liability insurance in question here requiring, as it does, that the insured shall cooperate with the insurer is a valid and enforceable provision in this state. Quisenberry v. Kartsonis, Mo.Sup., 297 S.W.2d 450, 453. And, where the policy contains an "omnibus clause," the cooperation clause is just as binding on one using the automobile with the consent of the insured as it is on the named insured.

■ The burden of proof upon the question of compliance with the provisions of a policy ordinarily rests upon the insured, if he seeks to recover indemnity under the policy, or upon the injured party, as here, who stands in the shoes of the insured. However, while it may be stated generally, as we have, that plaintiff had the burden of proving the facts essential to the garnishee's liability, yet in the instant case, where garnishee seeks to escape coverage solely because of an alleged breach of a policy provision requiring the insured to cooperate with the insurer, the burden was upon it to prove facts which would make that provision relieve appellant from liability. Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534, 536[1, 2]; Wendorff v. Missouri State Life Ins. Co., 318 Mo. 363, 1 S.W.2d 99, 101[1, 2]. See Fischer v. Western & Southern Indemnity Co., 233 Mo.App. 885, 110 S.W.2d 811, 815[1, 2], where the affirmative defense of failure to cooperate was sustained by a jury. And see Donaldson v. Farm Bureau Mut. Automobile Ins. Co., 339 Pa. 106, 14 A.2d 117, 118[1, 2].

We think the last mentioned rule applies in this case in view of the general terms of the policy in this respect; and that the burden of proving the affirmative defense of failure to cooperate in the respect charged rested upon insurer-appellant.

■ The specific terms of the cooperation clause providing for cooperation in particular respects as therein stated (such as attending trials, etc.) has been heretofore set out and it will be noted that appellant's defense here is not based upon the matters specifically mentioned therein, but such defense rests upon a determination of whether the specific facts which appellant has now presented and here contends come within the meaning of the word "cooperate," show a failure of the insured to cooperate with the insurer. It is evident that the first part of the provision, as to cooperation by the insured, is stated in a most general manner by use of a term "cooperate." A multitude of matters other than those specified in the section might be said to be included under the term, depending upon the particular facts in the particular case. Such defensive facts are no doubt better known to the insured than to the injured party or the judgment creditor of the insured. Since the appellant now contends that the specific matters relied upon show a failure on the part of the insured to cooperate and are included within the general word "cooperate," although not specifically set out in said section, the burden of proof rests upon appellant to prove the affirmative defense that these alleged breaches

are within the purview of the word "co-operate."

Appellant cites Northwestern Mut. Ins. Co. v. Independence Mut. Ins. Co., Mo.App., 319 S.W.2d 898, 905[8, 9], where, with reference to the question of cooperation of the insured with the insurer, that court stated: "In assessing insured's conduct it is not necessary for appellant [the garnishee] to show that insured's conduct resulted in prejudice to the insurer, in view of the fact that Condition 2 constituted a condition precedent. * * * Even so, insured's lack of cooperation, to exonerate insurer, must have been in some substantial and material respect. Lack of cooperation in an inconsequential or immaterial matter or manner will not justify a disclaimer of liability under the policy. If insured, however was guilty of lack of cooperation in a substantial and material respect, Northwestern cannot enforce the policy because Northwestern [the subrogee of the injured party] stands in the shoes of the insured. Its rights are derivative. * * * While it appears that insured's cooperation was not hearty, fulsome or cheerfully given, the insurer was duly notified of the occurrence of the accident. * * *" However, at 319 S.W.2d 898, 902, the same Court in the same case also stated: "Where the condition [breached] is expressly made a condition precedent, the insurer is relieved of liability whether or not the insurer has been injured or prejudiced by the breach of condition." In the case now before us we hereinafter find compliance with condition No. 16 and No. 6 of the policy's provisions and conditions.

Appellant further cites Home Indemnity Co. of New York v. Standard Accident Ins. Co. of Detroit, 9th Cir., 167 F.2d 919, 924, where the court said with reference to what constitutes cooperation with the insurer under a clause requiring cooperation, as follows: "Truthfulness seems to be the keystone of the co-operation arch. The insured must tell his insurer the complete truth concerning the accident, *and he must stick to this truthful version throughout the proceedings.* He must not embarrass or cripple his insurer in its defense against a civil suit arising out of the accident, by switching from one version to another. He must not blow hot and cold to suit his personal convenience."

In Western Casualty & Surety Co. v. Coleman, 8th Cir., 186 F.2d 40, 44[4], an opinion by Judge Sanborn stated that: "The Missouri cases cited [in the opinion] have established the rule that failure of an insured to give notice of an accident will not defeat his rights under a liability policy unless it contains a provision for a forfeiture in that event or unless the insurer proves that the failure resulted in prejudice * * *."

In Hawkeye-Security Ins. Co. v. Davis, 8th Cir., C.A., 277 F.2d 765, 770, with reference to the case of Northwestern Mutual Ins. Co. v. Independence Mutual Ins. Co., supra, 319 S.W.2d 898, the court said: "The rule of law announced in Northwestern Mutual is in direct conflict with our understanding of the applicable Missouri law based upon the Missouri decisions as reflected by our opinion in Western Casualty & Surety Co. case. Prior Missouri decisions reflect a great reluctance on the part of the Missouri courts to find nonliability on a policy because of violation of policy conditions in the absence of a showing of prejudice to the insurer. The court in Northwestern Mutual makes no attempt to reconcile its holding with the prior Missouri cases or to distinguish such cases. It is possible that the Supreme Court of Missouri, when confronted with a problem such as here presented, may follow the St. Louis Court of Appeals decision in the Northwestern Mutual case. However, such a result is by no means forecast by the previous decisions of the Missouri courts."

In the construction of an insurance policy, the rules to be followed are well settled. The policy is a contract. Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, insofar as open

to different constructions, that most favorable to the insured must be adopted. State ex rel. Security Mutual Life Ins. Co. v. Allen, 305 Mo. 607, 614, et seq., 267 S.W. 379, 381, 382; Wendorff v. Missouri State Life Ins. Co., supra, 1 S.W.2d 99, 101, 102 [4, 5]; Pierce v. Business Men's Assurance Co. of Am., Mo.Sup., 333 S.W.2d 97, 100 [2, 4].

 Any uncertainty, therefore, with reference to the meaning of the cooperation clause in question here must be construed against the insurer. Also, what constitutes cooperation or lack of it in the defense of an action as required by such a provision of a liability policy is usually a question of fact for the judge or jury hearing the cause. Finkle v. Western Automobile Ins. Co., 224 Mo.App., 285, 294, 295, 26 S.W.2d 843, 847 [5]; Nevil v. Wahl, 228 Mo.App. 49, 65 S.W.2d 123, 129[9, 11]; Donaldson v. Farm Bureau Mutual Ins. Co., supra.

In Quisenberry v. Kartsonis, supra, 297 S.W.2d 450, 453[1–4], the court stated: "The insured must perform the conditions of the contract upon which insurer's liability depends and, absent fraud, bad faith, or collusion by insurer, the insured's unexcused failure to cooperate in a substantially material respect releases insurer from liability under the policy as to the particular casualty in question. To establish a breach of a cooperation condition of an insurance contract requires a showing of insured's unexcused lack of cooperation in a substantially material respect. Generally, wilfully misinforming the insurer as to facts essential to the preparation of a defense or insured's collusion with a plaintiff to misrepresent material facts constitute breaches of cooperation conditions of insurance contracts. Finkle v. Western Automobile Ins. Co., * * * 26 S.W.2d 843, 846, 847; Fischer v. Western & Southern Indemnity Co., Mo.App., 106 S.W.2d 490, 491[1, 2]."

In view of the issues specifically submitted to the jury by the instructions given in the wrongful death action, it was conclu-

sively established between plaintiffs and defendant in that proceeding that defendant was, in fact, driving and operating the automobile when it collided with a tree and plaintiffs' daughter sustained the injuries resulting in her death. The same issue necessarily presents itself in this proceeding where a summons to garnishee has been issued in aid of an execution issued on the judgment entered on the verdict against defendant in the wrongful death case. In the pleadings garnishee has denied that Daryl Dean Smith was operating the automobile at the time and place in question and has alleged his failure to cooperate in the respects mentioned as discharging it from liability to plaintiffs.

The statement of facts concedes that on May 17, 1955, and prior to the collision, Daryl Dean had the permission of his father (to whom the policy of insurance had been issued) to use the automobile in question, the only restriction being that only Daryl Dean Smith should drive. At the scene of the collision Daryl Dean Smith advised the parties appearing there, including a patrolman, that he was operating the automobile at the time of the collision. Under the circumstances shown, this 16-year-old boy would have had little time for reflection or the presentation of a planned defense, nor would he likely have assumed the responsibility for the fatal injury to Ruth Meyers and injuries to others unless such was the fact. Further, the statement subsequently given to the insurance company reviewed the detailed facts and circumstances in a manner indicating that the party furnishing the statement stated the facts. In addition, we find nothing in the stipulation of facts tending to show that Ruth Meyers, age 14, had ever driven an automobile or that she could drive and, in view of her age, we may assume that she had no driver's license and was not legally entitled to operate a motor vehicle. Nor can we be ignorant of the fact that boys of the age of Daryl Dean like to drive and would not likely permit a younger person to operate the automobile in any event.

We have also noted that, in addition to statements to various persons at the scene of the collision admitting that he was driving the automobile, he gave both a sworn statement and a further detailed statement to the insurer within a few days. The circumstances indicate that he was then speaking the truth. It was only after time for reflection and for conferences with others and time for the examination of the liability policy which provided only a $15,000 coverage for one person and $30,000 for each accident that he decided to change his statement and say that plaintiffs' decedent was operating the automobile. We also note from the record that when suit was instituted his father was included as a defendant, a circumstance that was no doubt anticipated. After carefully reviewing the entire record as presented to us, we reach the conclusion that Daryl Dean Smith stated the true facts to the insurance carrier in the first instance. We can only guess as to the particular facts and circumstances causing him to change his story. If he did correctly advise the company of the true facts, as we believe that he did, there was no failure to cooperate with the insurer, even though such statement left the insurer little room for a defense as to liability for the death of one and the injury to other passengers in the automobile. We refuse to believe that these surviving teenagers, under the circumstances presented, wilfully gave false information to those that appeared on the scene to help them or to the insurance company that promptly made an investigation of the attendant facts. It was only after plenty of opportunity for reflection and outside influences that they repudiated their voluntary statements, and so stated the facts that the insurance carrier had two defenses, to wit: (1) that the defendant, its insured under the omnibus clause of the policy, was not operating the automobile; and (2) that plaintiffs' decedent was guilty of contributory negligence in producing her own death. We give the testimony of the surviving teenagers, as given at the jury trials, no more credence on the issue of liability than the jury gave

to their testimony in the wrongful death case or the trial judge gave to it in deciding this case.

As stated, appellant assigns the giving of conflicting statements to the insurer as evidencing a failure to cooperate and the insurer seeks to avoid all liability under its policy on the alleged ground of defendant's failure to cooperate, not on any grounds expressly stated in the policy as evidencing non-cooperation, but upon the factual grounds set out in the stipulation of facts.

Appellant bitterly complains that the statements of the insured and his surviving companions at the scene of the tragedy were used to impeach the testimony of these same witnesses at the trial. In other words, appellant contends that it should have had the benefit of what we believe to have been false testimony, without having it weakened by proof or admissions as to prior conflicting statements of these witnesses at the scene of the collision.

As stated, we do not construe the statements made by the insured at the scene of the collision, or the statements given the insurer upon its investigation, to sufficiently evidence a failure by the insured to cooperate with the insurer. We find that the statements given by the insured to the insurer at that time were true. We must now determine whether the insured's subsequent statement that he was not operating the automobile and his testimony to that effect in the several trials, as a witness for the insurer, constituted a failure to cooperate with the insurer. We find that it did not.

On the issue of failure of defendant-insured to cooperate with the insurer, the record, in our view, shows cooperation beyond the call of duty required by the cooperation provision. And see De Hart v. Ill. Casualty Co., 7th Cir., C.A., 116 F.2d 685, 687. Most of the cases cited in the briefs, or found by us, deal with the issue of lack of cooperation with the insurer by reason of a change of testimony, from favorable statements to unfavorable state-

ments. Here the facts are to the contrary, because, under the insured's original statement and affidavit, the insurer was in effect foreclosed on the issue of liability, while after the change in testimony, whether false or true, the insurer had two defenses, as hereinbefore stated.

In view of our finding that Daryl Dean Smith was, in fact, operating the automobile at the time of the collision, we have concluded that appellant was not prejudiced by the subsequent statements of the insured which the insurer accepted and used as a basis for a defense to plaintiffs' action. On the record presented we find no prejudice to appellant on account of any alleged failure to cooperate with the insurer.

The judgment is affirmed.

All concur.